ARNOLD & PORTER KAYE SCHOLER LLP
Allison B. Rumsey (*PHV app. forthcoming*)
Ethan G. Shenkman (*PHV app. forthcoming*)
601 Massachusetts Avenue, NW
Washington, DC 20001
(202) 942-5095 (Rumsey)
(202) 942-5267 (Shenkman)
Allison.Rumsey@arnoldporter.com
Ethan.Shenkman@arnoldporter.com

PERKINS COIE LLP
Eric B. Fjelstad (Alaska Bar No. 9505020)
James N. Leik (Alaska Bar No. 8111109)
1029 W. 3rd Avenue, Suite 300
Anchorage, AK 99501
(907) 263-6973 (Fjelstad)
(907) 263-6923 (Leik)
EFjelstad@perkinscoie.com
JLeik@perkinscoie.com

*Attorneys for Proposed Intervenor-Defendant Donlin Gold LLC*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| ORUTSARARMIUT NATIVE COUNCIL, *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　　　v.<br><br>UNITED STATES ARMY CORPS OF ENGINEERS, *et al*,<br><br>　　　　　Defendants. | No. 3:23-cv-00071-JMK |

## MOTION TO INTERVENE
## BY DONLIN GOLD LLC

## I. MOTION

Donlin Gold LLC ("Donlin") hereby moves to intervene as a defendant in the above-captioned case under Federal Rule of Civil Procedure 24 ("Rule 24"). As the proponent of the challenged project, Donlin meets the requirements for intervention as of right under Rule 24(a)(2); alternatively, Donlin should be permitted to intervene under Rule 24(b)(1)(B). In support of its motion, Donlin relies upon the arguments presented in this memorandum and the accompanying declaration. Counsel for Donlin conferred with counsel for all parties on this motion. Federal Defendants represent that they take no position; Plaintiffs represent that they take no position at this time but reserve the right to file a response.

Donlin respectfully requests that the Court grant intervention as of right, or in the alternative permissive intervention, and grant such other further relief as the Court may allow.

## II. INTRODUCTION

Donlin, in partnership with two Alaska Native Corporations ("ANCs"), the Calista Corporation ("Calista") and The Kuskokwim Corporation ("TKC"), has been working for more than two decades to develop a gold mine on lands that Calista and TKC selected under the Alaska Native Claims Settlement Act ("ANCSA") for their potential mineral development and resultant social and economic benefit to their shareholders. Calista, whose shareholders include members of the Plaintiff Tribes, owns the subsurface mineral rights of the gold deposit and approximately half of the surface estate on which the mine site would be developed. TKC owns the remaining surface estate. The Donlin project

will entail the construction, operation, reclamation, and closure of the mine and related infrastructure, a 316-mile underground pipeline to provide natural gas to power the mine with lower carbon energy, and infrastructure improvements and activities within a transportation corridor (the "Project"). Donlin is the holder of the relevant federal authorizations for the Project and would construct and operate the mine. If Plaintiffs' lawsuit challenging those federal authorizations is successful, it would cause significant delays to the Project, imperiling the future of this investment for Donlin and its partners, Calista and TKC.

Following the comprehensive environmental analysis conducted for the Environmental Impact Statement ("EIS"), the U.S. Army Corps of Engineers ("Corps") and the U.S. Bureau of Land Management ("BLM") issued a Joint Record of Decision ("JROD") approving the project in August 2018. Over the past five years, in reliance on those federal authorizations, Donlin has invested enormous resources to obtain the necessary state permits and conduct exploration activities, as well as to refine the Project and further minimize environmental consequences.

The relief requested by Plaintiffs, if successful, would cause significant delays in moving forward with the Project. Such an outcome would not only upend significant investment and decades of effort—over 20 years of mineral exploration, environmental and engineering studies, and permitting—by Donlin and its ANC partners, but would also imperil the much-needed economic benefits and opportunities that have already begun to

flow to Calista, TKC, their shareholders, and the Alaska Native communities in this remote region of the State.

As the holder of the federal authorizations and other financial, property, and regulatory interests that would be affected, directly or indirectly, by this lawsuit, Donlin meets all the requirements to intervene as a matter of right or, in the alternative, for permissive intervention. Donlin's Motion to Intervene is supported by the Declaration of Dan Graham, General Manager of Donlin Gold LLC.

## III. BACKGROUND

### A. Donlin's Investment

Donlin is a joint venture owned equally by NovaGold Resources Alaska, Inc., and Barrick Gold U.S., Inc. Declaration of Dan Graham, ¶ 1 ("Graham Decl."). Donlin holds a Mining Lease Agreement with Calista and a Surface Use Agreement with TKC, pursuant to which Donlin will develop the Project. *Id.*, ¶ 4. The agreements were initially entered into in 1995 with another company that Donlin later acquired. *Id.* The mine, once constructed, is expected to operate for 27 years. *Id.*, ¶ 6.

In 2012, after over 15 years of mineral exploration and environmental and engineering studies, Donlin applied to the Corps for a Clean Water Act ("CWA") section 404 and Rivers and Harbors Act ("RHA") section 10 permit to construct the mine. *Id.*, ¶ 7. Donlin also sought a right-of-way ("ROW") grant from BLM to construct an underground natural gas pipeline across BLM-managed lands. *Id.* These applications initiated the environmental review process required for major federal actions under the National Environmental Policy Act ("NEPA").

The NEPA process resulted in a detailed environmental analysis in the form of an EIS, which was the product of study and comments from multiple state and federal agencies, Tribes (including Plaintiffs), Native Village Corporations, and the public. *Id.*, ¶¶ 8, 10. Included in the EIS is an analysis by BLM pursuant to section 810 of the Alaska National Interest Lands Conservation Act ("ANILCA") regarding the potential impacts to local subsistence activities from the Project and plans to avoid and mitigate such potential impacts. *Id.*, ¶ 9.

In August 2018, the Corps and BLM issued the JROD granting Donlin a CWA section 404 and RHA section 10 permit (collectively, the "Corps Permit") as well as a pipeline ROW. *Id.*, ¶ 11. The Corps determined that the Project would comply with all CWA section 404 and RHA section 10 regulations and restrictions, and BLM concluded that Donlin will sufficiently avoid and/or minimize potential impacts to subsistence resources resulting from the Project. *Id.*, ¶ 11.

As part of the planning and review process, Donlin developed an extensive set of mitigation measures to avoid, minimize, and mitigate any potential environmental and subsistence impacts from the Project. *Id.*, ¶¶ 13–14. These initiatives include establishing, pursuant to Donlin's contractual agreements with Calista and TKC, the *Donlin Advisory Technical Review and Oversight Committee* ("DATROC"), which is serving as an oversight mechanism to facilitate local community and tribal coordination with Donlin throughout the Project's development and implementation. *Id.*, ¶ 14. Another example of Donlin's mitigation initiatives is its Rainbow Smelt Monitoring

Program, pursuant to which Donlin has been conducting extensive studies on smelt populations in the Kuskokwim River over the past several years and will utilize the resulting data in Donlin's efforts to limit any potential impacts to those populations. *Id.*, ¶ 14.

The mine site is located in a remote area of Western Alaska, 10 miles north of the Native Village of Crooked Creek, which sits on the Kuskokwim River, about 270 miles northwest of Anchorage. *Id.*, ¶ 2. Development of the Donlin mineral deposit represents one of the few opportunities to provide a significant, long-term injection of economic resources into the region. *Id.*, ¶ 6. In addition to providing dividends to Calista and TKC shareholders, as required by ANCSA, a portion of the revenue from the Project will be shared among all twelve ANCs as well as with Native Village Corporations throughout the State, which will benefit a much broader community of Alaska Natives. *Id.*, ¶ 6.

While construction of the mine has not started, the Project has already begun to provide economic opportunities to the region. *Id.*, ¶ 5. Donlin has employed over 150 shareholders of Calista and TKC in the past several years. *Id.* Donlin has spent over $70 million in operational expenses on the Project since 2019, which has gone toward wages, payments to the land and resource-holders, and to Alaska-based businesses and suppliers. *Id.* Donlin estimates that it has provided over $15 million in wages and $33 million to Alaska-based businesses since 2019. *Id.*

Donlin has also invested substantial resources into local communities, including support for a variety of environmental, cultural preservation, and infrastructure projects,

such as a multi-year program to remove hazardous waste from those communities, sponsorship of cultural activities and regional sporting events, and job training, as well as supporting water supply and wastewater systems, and landfill improvements. *Id.*, ¶ 5. Donlin also provides educational assistance, including scholarships for students from the region. *Id.* Such opportunities will compound over the next several decades once construction and operation of the Project are fully underway.

Concurrent with the federal process, Donlin initiated the process for obtaining the numerous authorizations necessary from Alaska state agencies, including a Certificate of Reasonable Assurance of compliance with state water quality standards pursuant to section 401 of the CWA. *Id.*, ¶ 12. Donlin has devoted significant resources to obtaining and defending these authorizations in state administrative proceedings and litigation—including challenges by Plaintiff Orutsararmiut Native Council—a process that is still ongoing. *Id.*

### B.     Donlin's Interest in the Litigation

In the present action, Plaintiffs challenge (i) the sufficiency of the final EIS prepared under NEPA, (ii) the Corps Permit, and (iii) BLM's grant of the pipeline ROW and ANILCA section 810 determination. Donlin's concrete interest in this lawsuit is manifest. Donlin is the direct holder of the federal authorizations at issue and invested considerable time and resources into the review processes under NEPA, the CWA, the RHA, and ANILCA section 810. *Id.*, ¶¶ 7–11.

If successful, this action would cause significant delays to the Project resulting in vastly increased costs, upending the project development plans, and imperiling the future of this investment for Donlin as well as its partners, Calista and TKC. *Id.*, ¶ 15. Significant delays would have spillover effects for the state permits that could cause further setbacks. *Id.* Given the significant, concrete, and direct implications that this litigation holds for Donlin's interests, Donlin respectfully requests leave to intervene as a defendant either by right or by permission of the Court.

## IV. ARGUMENT

### A. Donlin Is Entitled to Intervene as a Matter of Right

Pursuant to Federal Rule of Civil Procedure 24(a)(2), a court must, upon timely motion, permit intervention as a matter of right by anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." The Ninth Circuit applies a four-part test:

> (1) the motion must be timely; (2) the applicant must claim a 'significantly protectable' interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir.1993)).

The Ninth Circuit, like other courts, applies this test liberally in favor of potential intervenors. *See United States v. City of Los Angeles*, 288 F.3d 391, 397–98 (9th Cir. 2002) ("A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts. By allowing parties with a *practical* interest in the outcome of a particular case to intervene, we often prevent or simplify future litigation involving related issues; at the same time, we allow an additional interested party to express its views before the court.") (internal quotation marks and citation omitted); *see also Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001) (explaining that, "[i]n general, [the Ninth Circuit] construe[s] Rule 24(a) liberally in favor of potential intervenors").

Although all four factors must be present, the court's review is guided by "practical considerations, not technical distinctions." *See Alaska v. Nat'l Marine Fisheries Serv.*, No. 3:22-cv-00249-JMK, 2023 WL 2789352, at *2 (D. Alaska Apr. 5, 2023) (quoting *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011)). Courts also accept as true non-conclusory allegations made in support of a motion to intervene. *See Sw. Ctr. for Biological Diversity*, 268 F.3d at 819–20. As set forth below, Donlin satisfies all four elements for intervention as a matter of right.

1. **Donlin's motion is timely.**

Courts analyze the timeliness of a motion to intervene on the basis of three factors: (1) the stage of the proceedings; (2) prejudice to other parties; and (3) the reason for and length of delay, if any. *See Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1319

(9th Cir. 1997). Each of these factors weighs in favor of Donlin's intervention as of right. Donlin submitted this motion to intervene at the earliest possible procedural opportunity. No substantive pleadings have been filed other than the complaint, which was filed less than three weeks ago. As such, the first and third factors relevant to timeliness weigh in favor of granting intervention. *See Citizens for Balanced Use*, 647 F.3d at 897 (deeming motion timely when filed less than three months after the complaint was filed and less than two weeks after the U.S. Forest Service's answer).

Further, with respect to the second factor, there will be no prejudice to the rights of other parties in this proceeding. Donlin's intervention will not cause delays to the briefing schedule, and Donlin will endeavor to avoid duplication of issues with other parties.

### 2. Donlin has a significantly protectable interest in the resolution of this action.

An intervenor has a significantly protectable interest where the "'interest is protectable under some law' and [where] 'there is a relationship between the legally protected interest and the claims at issue.'" *Wilderness Soc'y*, 630 F.3d at 1180 (quoting *Sierra Club*, 995 F.2d at 1484). The Ninth Circuit has explained that "'[w]hether an applicant for intervention demonstrates sufficient interest in an action is a practical, threshold inquiry. No specific legal or equitable interest need be established.'" *Sw. Ctr. for Biological Diversity*, 268 F.3d at 818 (9th Cir. 2001) (quoting *Greene v. United States,* 996 F.2d 973, 976 (9th Cir.1993)). An intervenor can demonstrate a significantly protectable interest when "the . . . relief sought by the plaintiffs will have direct,

immediate, and harmful effects upon [the intervenor's] legally protectable interests." *Id.* (quoting *Forest Conservation Council v. U.S. Forest Serv.,* 66 F.3d 1489, 1494 (9th Cir. 1995).

Contractual and property rights are sufficient to establish a legally protectable interest warranting intervention where those interests are closely related to the claims at issue. *See Sierra Club*, 995 F.2d at 1482–83 (finding that the City of Phoenix's property rights in a wastewater treatment plant and permits provided a sufficient interest to support intervention in a CWA case), *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d at 1173; *see also Chilkat Indian Vill. of Klukwan v. Bureau of Land Mgmt.*, No. 3:17-cv-00253-TMB, 2018 WL 9854668, at *3 (D. Alaska May 24, 2018) (in a litigation against BLM's environmental analysis under NEPA for approval of a mining exploration plan, finding a significantly protectable interest in the mining company-intervenor's mining claims and land leases given their relation to the NEPA process).

Donlin has significant and well-established regulatory, property, contractual, and economic interests at stake in the present litigation. Donlin is the holder of the federal authorizations at issue and Donlin has invested substantial resources and time into mineral exploration, the development and design of the Project, the completion of the NEPA and ANILCA section 810 processes, and securing the Corps Permit and the pipeline ROW grant. Graham Decl., ¶¶ 5, 7, 8, 10, 11, 12. Each of those is a significant interest protectable by law and directly challenged in this action.

Further, Donlin holds financial, contractual, and property interests in the Project. As noted above, Donlin holds agreements with Calista and TKC for use of the land and subsurface mineral estate for the Project. *Id.*, ¶ 4. Donlin also holds a state ROW for construction and operation of the buried natural gas pipeline, as well as numerous other authorizations from Alaska state agencies that could be placed in jeopardy. *Id.*, ¶ 12.

Donlin has clearly demonstrated that it has significantly protected interests at stake to support its intervention as of right.

### 3. Disposition in favor of Plaintiffs will impair Donlin's interests.

The concrete harms to Donlin's interests that would flow if Plaintiffs were successful on the merits weigh heavily in favor of Donlin's intervention as of right. In assessing the impairment factor, the Ninth Circuit follows the guidance of the Federal Rules of Civil Procedure Advisory Committee, which explains that "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene . . . ." *See Citizens for Balanced Use*, 647 F.3d at 898 (quoting Fed. R. Civ. P. 24 advisory committee's note). Intervention as of right is considered particularly appropriate when the relief sought would enjoin an existing interest. *See Sw. Ctr. for Biological Diversity*, 268 F.3d at 818, 822 (granting intervention where the relief sought threatened existing project approvals).

Plaintiffs seek injunctive relief. *See* Compl. for Declaratory and Injunctive Relief, ECF 1 at 28. As noted above, the relief requested would have direct, immediate, and harmful effects on Donlin's interests. The relief requested would immediately halt the

advancement of the Project and result in increased costs to Donlin and the federal agencies involved. It could also jeopardize Donlin's other existing agreements and approvals. Such substantial and practical harms weigh heavily in favor of Donlin's right to intervene.

### 4. Defendants do not adequately represent Donlin's interests.

As a practical matter, Donlin's interests are sufficiently divergent from the interests of the Federal Defendants to warrant Donlin's intervention as of right. The burden of demonstrating inadequate representation is low; Donlin can satisfy this criterion by showing that representation of its interests by the Federal Defendants "may be" inadequate. *Sw. Ctr. for Biological Diversity*, 268 F.3d at 823 (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)).

In assessing representation, courts consider: (1) whether the present parties' interests are such that they will undoubtedly make all of the intervenor's arguments; (2) whether the present parties are capable and willing to make those arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect. *See Chilkat Indian Vill. of Klukwan*, 2018 WL 9854668 at *4 (mining company's interests in mineral exploration on BLM-managed federal lands inadequately represented by BLM because company's legal and financial interests were narrower than BLM's "broader and more diffuse" considerations); *see also Sw. Ctr. for Biological Diversity*, 268 F.3d at 823–24 (developer-intervenor's interests sufficiently divergent from the government's because government's development goals and

mitigation options may differ significantly from those of the developer, and government could not be expected to defend all of the interests of a private sector actor).

Donlin's interests are not adequately represented by the federal government defendants. Their interests are sufficiently divergent to rebut the presumption that representation by the government agencies will be adequate. The federal government's priorities and interests, which take into consideration nationwide policies, are considerably broader than Donlin's, which are focused on developing this particular Project, providing value to the company and the ANCs on whose land the project will be developed, and upholding its agreements with those ANCs. Donlin has invested considerable resources and has acquired contractual, property, and regulatory interests in this Project, each of which the Federal Defendants may not fully represent in this litigation.

Further, the benefits of this project will largely accrue to Donlin, the ANCs, and the State of Alaska more so than to federal government, and the impact of delay will be significantly more consequential for each of those entities than for the federal government. Graham Decl., ¶¶ 4–6, 15. As such, the federal government may not share the same degree of interest in the outcome of the litigation.

Donlin and the federal government also have different roles in the implementation of the various plans under the permits. Moreover, Donlin has a number of state-level environmental regulatory commitments that similarly do not fall under federal

jurisdiction. *Id.*, ¶ 12. The Federal Defendants may not be able to fully represent Donlin's perspectives on any of these issues.

### B. Alternatively, Donlin Is Entitled to Permissive Intervention

Should this Court deny Donlin's entitlement to intervene as of right, it should grant permissive intervention. Upon timely filing of a motion, a court may permit a party to intervene who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Similar to intervention as of right, motions for permissive intervention are construed liberally in favor of the moving party. *See City of Los Angeles*, 288 F.3d at 397–98.

In reviewing a permissive motion to intervene, a court considers "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *See SEC v. U.S. Realty & Improvement Co.*, 310 U.S. 434, 459 (1940). As discussed above, Donlin's motion to intervene is timely and will not unduly delay this litigation or prejudice the rights of the other parties. Donlin's interests, including its authorizations to develop the Project, are directly at stake in this litigation. Donlin's defenses will seek to uphold the challenged federal actions, directly responding to Plaintiffs' allegations and the questions of law and fact at issue in this dispute. Donlin's positions in this litigation will thus cover issues of law and fact common to the main action. Accordingly, should this Court deny Donlin's motion for intervention as of right, permissive intervention should be granted.

## V. CONCLUSION

The litigation filed by Plaintiffs could have significant consequences for the Donlin Project. Donlin is best positioned to assert its unique interests in this litigation and therefore requests that the court grant its motion to intervene.

Respectfully submitted this 24th day of April, 2023,

        ARNOLD & PORTER KAYE SCHOLER LLP
        /s/ *Allison B. Rumsey*
        Allison B. Rumsey (*PHV app. forthcoming*)
        Ethan G. Shenkman (*PHV app. forthcoming*)
        601 Massachusetts Avenue NW
        Washington, DC 20001
        (202) 942-5095 (Rumsey)
        (202) 942-5267 (Shenkman)
        Allison.Rumsey@arnoldporter.com
        Ethan.Shenkman@arnoldporter.com

        PERKINS COIE LLP
        /s/ *Eric B. Fjelstad*
        Eric B. Fjelstad (Alaska Bar No. 9505020)
        James N. Leik (Alaska Bar No. 8111109)
        1029 W. 3rd Avenue, Suite 300
        Anchorage, AK 99501
        (907) 263-6973 (Fjelstad)
        (907) 263-6923 (Leik)
        EFjelstad@perkinscoie.com
        JLeik@perkinscoie.com

        *Attorneys for Proposed Intervenor-Defendant Donlin Gold LLC*

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on April 24, 2023, I filed the foregoing document electronically through the CM/ECF system, which caused all parties or counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

                                  /s/ *Eric B. Fjelstad*
                                      Eric B. Fjelstad

*Orutsararmiut Native Council, et al. v. U.S. Army Corps of Eng'rs, et al.*,
Case No. 3:23-cv-00071-JMK
    17

Case 3:23-cv-00071-JMK   Document 8   Filed 04/24/23   Page 17 of 17