# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

ORUTSARARMUIT NATIVE COUNCIL, *et al.*,

          Plaintiffs,

   v.

UNITED STATES ARMY CORPS OF ENGINEERS, *et al.*,

          Defendants,

   and

DONLIN GOLD, LLC, *et al.*

          Intervenor-Defendants.

Case No. 3:23-cv-00071-SLG

## <u>ORDER ON REMEDY</u>

Before the Court are the parties' supplemental briefs and responses on the appropriate remedy in this case.[1]  Oral argument was held on May 9, 2025.[2]

## BACKGROUND

This case is about Donlin Gold, LLC's ("Donlin") plan to build an open pit gold

---

[1] Docket 116 (Federal Defendants' Br.); Docket 117 (State of Alaska's Br.); Docket 118 (Donlin Gold, LLC's Br.); Docket 119 (Calista Corporation's Br.); Docket 120 (Plaintiffs' Br.); Docket 122 (Donlin Gold, LLC's Resp. Br.); Docket 123 (Federal Defendants' Resp. Br.); Docket 124 (State of Alaska Resp. Br.); Docket 125 (Calista Corporation's Resp. Br.); Docket 126 (Plaintiffs' Resp. Br.).  The Court has also reviewed Intervenor-Defendants Donlin Gold, LLC, and Calista Corporation's Joint Notice of Supplemental Authority, Docket 138, and Plaintiffs' Response, Docket 139.

[2] Docket 133.

mine 10 miles north of the Native Village of Crooked Creek in the Kuskokwim River watershed in southwestern Alaska.[3]  In July 2012, Donlin sought a permit from the U.S. Army Corps of Engineers pursuant to Section 404 of the Clean Water Act ("CWA"), 33 U.S.C. § 1344, to allow for the discharge fill within waters of the United States.  Donlin also applied for a right-of-way from the Bureau of Land Management ("BLM") to construct portions of the proposed natural gas pipeline across federal lands.

In April 2018, as required by the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, the Corps prepared a final environmental impact statement ("FEIS"), with BLM participating as a cooperating agency, analyzing the environmental effects of Donlin's proposed mine.  BLM adopted the FEIS as prepared by the Corps.  In August 2018, the Corps and BLM issued a Joint Record of Decision ("JROD") authorizing the discharge of fill into waters of the United States pursuant to Section 404 and granting Donlin a right-of-way ("ROW") over federal lands.  In the JROD, BLM also determined that approval of the ROW would not violate Section 810 of the Alaska National Interest Lands Conservation Act ("ANILCA"), 16 U.S.C. § 3101 *et seq*.

Plaintiffs brought this Administrative Procedures Act ("APA") suit challenging the FEIS, JROD, and ROW under NEPA, ANILCA, and the CWA.[4]  This Court by

---

[3] These facts are taken from the Court's prior order.  *See generally* Docket 99.

[4] Plaintiffs are Orutsararmiut Native Council; Tuluksak Native Community; Organized Village of Kwethluk; Native Village of Eek; Native Village of Kwigillingok; and Chevak Native Village.  Docket

prior order found that Federal Defendants violated NEPA and § 810 of ANILCA "by failing to consider a tailings spill larger than 0.5% of the [tailings storage facility's] total volume and by declining to assess a catastrophic tailings spill based solely on its low probability of occurrence" in the FEIS.[5] The Court rejected Plaintiffs' other arguments, namely that Federal Defendants violated NEPA because the FEIS's discussion of a State of Alaska Health Impact Assessment was misleading and violated the CWA because the Corps did not sufficiently consider the impact of barging activities on rainbow smelt in the Kuskokwim River.[6] The Court now considers the appropriate remedy.

## LEGAL STANDARD

"Where a court holds an agency action unlawful, vacatur and remand is the default remedy under the APA, but the court retains equitable discretion in 'limited circumstances' to remand a decision without vacatur while the agency corrects its errors."[7] "Whether agency action should be vacated depends on how serious the

---

24 at ¶ 1 (Am. Compl.).

[5] Docket 99 at 16, 26-28. Federal Defendants are the United States Army Corps of Engineers ("Corps"); the United States Bureau of Land Management ("BLM"); the United States Department of the Interior ("Interior"); Colonel Damon Delarosa, in his official capacity as Commander, Alaska District, United States Army Corps of Engineers; Laura Daniel-Davis, in her official capacity as Principal Deputy Assistant Secretary, Land and Minerals Management, United States Department of the Interior; and Steven Cohn, in his official capacity as State Director, Bureau of Land Management, State of Alaska. Docket 24 at ¶¶ 19-24.

[6] Docket 99 at 21, 25, 35.

[7] *Mont. Wildlife Fed'n v. Haaland*, 127 F.4th 1, 50 (9th Cir. 2025) (quoting *Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015)); *see* 5 U.S.C. § 706(2)(A) (directing reviewing courts to "set aside" unlawful agency action).

Case No. 3:23-cv-00071-SLG, *Orutsararmiut Native Council, et al. v. U.S. Army Corps of Eng'rs, et al.*
Order on Remedy
Page 3 of 12

Case 3:23-cv-00071-SLG    Document 140    Filed 06/10/25    Page 3 of 12

agency's errors are 'and the disruptive consequences of an interim change that may itself be changed.'"[8]  In evaluating "the seriousness of the error," courts "consider whether 'on remand, a different result may be reached.' The court may 'look[] at whether the agency would likely be able to offer better reasoning or whether by complying with procedural rules, it could adopt the same rule [or decision] on remand,'" "or whether such fundamental flaws in the agency's decision make it unlikely that the same rule would be adopted on remand."[9]  "Even if an EIS falls short in some respects, that deficiency may not necessarily require a court to vacate the agency's ultimate approval of a project, at least absent reason to believe that the agency might disapprove the project if it added more to the EIS."[10]

## DISCUSSION

Plaintiffs seek vacatur of the JROD, Section 404 permit, and ROW.[11]  They maintain that Federal Defendants' errors were serious because they undermine the purposes of NEPA and ANILCA.[12]  In Plaintiffs' view, "[g]iven an opportunity to cure

---

[8] *Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir. 2012) (quoting *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993)).

[9] *Mont. Wildlife Fed'n*, 127 F.4th at 50-51 (alterations in original) (quoting *Pollinator Stewardship Council*, 806 F.3d at 532); *Pollinator Stewardship Council*, 806 F.3d at 532; *see Allied-Signal*, 988 F.2d at 151 (declining to vacate because there was "at least a serious possibility that the [agency would] be able to substantiate its decision on remand").

[10] *Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*, __ U.S. __, 221 L. Ed. 2d 820, 838 (2025).

[11] Docket 120 at 6.  The parties agree that Plaintiffs are not seeking vacatur of the FEIS.  *See* Docket 118 at 2 n.1; Docket 126 at 5.

[12] Docket 120 at 8-9 (first citing Docket 99 at 16-17 ("The two purposes of NEPA require the consideration of a large tailings spill: '[f]irst, ensuring that the agency will have and will consider detailed information concerning significant environmental impacts; and, second, ensuring that the public can both contribute to that body of information, and can access the information that is made

these errors on remand, the agencies may reach a different result, and thus vacatur is warranted."[13] Plaintiffs also contend that Defendants cannot overcome the default remedy of vacatur because they cannot show that any disruption would occur with vacatur.[14] That is because they maintain that "vacatur would prevent environmental harm" and "[a]ny further delay in construction and potential economic benefits of the project to conduct the necessary environmental and subsistence review is the normal consequence of vacatur."[15]

Federal Defendants and Intervenor-Defendants disagree that vacatur is warranted in this case.[16] Regarding the seriousness of the agencies' errors, Federal Defendants maintain that "on remand, the Corps and BLM can readily cure the narrow, procedural defects identified by the Court—they can undertake the analyses

---

public.'" (quoting *San Luis Obispo Mothers for Peace v. Nuclear Regul. Comm'n*, 449 F.3d 1016, 1028 (9th Cir. 2006))); and then citing *Se. Alaska Conservation Council v. U.S. Forest Serv.*, 468 F. Supp. 3d 1148, 1152 (D. Alaska 2020) ("The Project EIS's lack of site-specificity and inadequate comparison of alternatives precluded the Forest Service from taking the requisite hard look at the Project's potential impacts and deprived the public of the opportunity to comment on those impacts, thus undermining the 'two fundamental objectives' of NEPA . . . . These errors therefore strongly weigh in favor vacatur.").

[13] Docket 120 at 10; *see* Docket 120 at 7-8 ("In weighing the seriousness of an agency's error, the Ninth Circuit considers whether an agency could adopt the same decision on remand or whether, after following the applicable rules, a 'different result may be reached.'" (quoting *Mont. Wildlife Fed'n*, 127 F.4th at 51)).

[14] Docket 120 at 17.

[15] Docket 120 at 18-19 (citing *Se. Alaska Conservation Council*, 468 F. Supp. 3d at 1155-56 (granting vacatur in part because it "would not terminate any ongoing projects" and finding disruptive consequences of vacatur did not outweigh the need for a NEPA-compliant analysis before construction).

[16] Dockets 116, 117, 118, 119. Intervenor-Defendants are Donlin, Calista Corporation ("Calista"), and the State of Alaska ("the State").

Case No. 3:23-cv-00071-SLG, *Orutsararmiut Native Council, et al. v. U.S. Army Corps of Eng'rs, et al.*
Order on Remedy
Page 5 of 12

the Court found lacking. It is also likely that the agencies may reaffirm the Section 404 permit and ROW lease after further analyses."[17]  Similarly, Donlin asserts that the "fix is a matter of degree," as the Corps "ran models to illustrate the downstream extent and impacts of a tailings spill, mapping the modeling results" in the FEIS and could "take a similar approach but model a larger spill."[18]  Further, Donlin maintains that a supplemental analysis on the impact of a larger spill "is unlikely to change the agencies' overall assessment of the project's environmental impacts" because the FEIS demonstrated that the agencies were aware that a larger spill could occur and the likelihood of a larger spill is remote.[19]

Intervenor-Defendants the State of Alaska and Calista Corporation also maintain that Plaintiffs misstate the legal standard on whether an agency's error is serious and vacatur is warranted.[20]  The Court agrees; the Court reads *Montana Wildlife* to hold that an agency's error does not require vacatur when "the agency would likely be able to offer better reasoning" such that "it could adopt the same rule

---

[17] Docket 116 at 6.

[18] Docket 118 at 8.

[19] Docket 118 at 8-11.

[20] Docket 124 at 3 ("Plaintiffs ask this Court to consider whether the actions agencies could reach *different* decisions after remand. The proper test, however, is to ask whether the agencies could reach the *same* decision after conducting the additional analysis."); Docket 125 at 2-3 ("Plaintiffs offer nothing that contradicts Defendants' well-supported conclusion that they 'will be able to correct any deficiencies on remand and will likely be able to reaffirm their decisions.'  Instead, Plaintiffs invert this straightforward inquiry, repeatedly asserting that vacatur is appropriate because the Federal Defendants *could* reach a *different* result on remand.").

Case No. 3:23-cv-00071-SLG, *Orutsararmiut Native Council, et al. v. U.S. Army Corps of Eng'rs, et al.*
Order on Remedy
Page 6 of 12

Case 3:23-cv-00071-SLG    Document 140    Filed 06/10/25    Page 6 of 12

[or decision] on remand."[21] This is in contrast to a "fundamental flaw[] in the agency's decision" that would "make it unlikely that the same rule would be adopted on remand," which is when vacatur would be appropriate.[22]

As to whether vacatur would have disruptive consequences, Federal Defendants contend that vacatur would cause regulatory confusion and potential economic loss to Intervenor-Defendants Donlin and Calista.[23] Donlin agrees that vacatur would cause disruption and would create uncertainty regarding Donlin's investments into the project and the viability of continuing to pursue construction of the mine; the authorizations of state permits, certifications, and ongoing proceedings; and current and ongoing job creation, environmental mitigation, and investments in the Yukon-Kuskokwim Region.[24] Calista maintains that vacatur would be "disastrous for Calista, its shareholders, local residents who would be hired to construct and operate the Project, ANCs and Alaska Natives throughout Alaska that depend on funds distributed among regional ANCs pursuant to ANCSA § 7(i), and Donlin."[25]

---

[21] *Mont. Wildlife Fed'n*, 127 F.4th at 51 (alteration in original) (quoting *Pollinator Stewardship Council*, 806 F.3d at 532).

[22] *Pollinator Stewardship Council*, 806 F.3d at 532.

[23] Docket 116 at 6.

[24] Docket 118 at 12-15 (citing Docket 118-1 (Fernandez Decl.)). Intervenor-Defendant State of Alaska contends that vacatur would disrupt State operations, as the State "utilizes the EIS and supporting documents during its review processes for Donlin's state-issued permits." Docket 117 at 9. However, the Court notes that Plaintiffs are not seeking vacatur of the FEIS in this case, and so the State could continue to rely on the FEIS during its ongoing review for state-issued permits.

[25] Docket 119 at 10.

Case No. 3:23-cv-00071-SLG, *Orutsararmiut Native Council, et al. v. U.S. Army Corps of Eng'rs, et al.*
Order on Remedy
Page 7 of 12

Case 3:23-cv-00071-SLG    Document 140    Filed 06/10/25    Page 7 of 12

Calista stresses that "[t]he future of Alaska Native cultures in the Y-K Region rely critically on there being sufficient economic opportunities to keep people in their ancestral homelands. The Project is a critical piece of the plan to ensure that the Y-K Region remains home to Alaska Natives for generations to come."[26]

And Defendants maintain that there would be no environmental harm during remand without vacatur because the tailings facility would not be constructed until after remand is complete.[27] To that end, in its proposed order on the appropriate remedy, Donlin proposes that the Court enter an order prohibiting Donlin from commencing construction activities authorized by the Section 404 Permit or the ROW without 90 days' advance notice to the parties and the Court during remand.[28]

In a supplemental filing, Donlin and Calista contend that the Supreme Court's recent decision in *Seven County Infrastructure Coalition v. Eagle County* supports their position that vacatur is not warranted.[29] They point to portions of the Court's opinion emphasizing that "NEPA is a procedural cross-check, not a substantive

---

[26] Docket 119 at 12.

[27] Docket 118 at 3 ("[N]either Plaintiffs nor the environment would suffer *any* harm during remand, given that no construction of the tailings dam can take place until state permits are issued, which is expected to take at least two years—more than enough time to complete the remand."); Docket 125 at 7 ("Leaving the Approvals in place while the agencies cure the errors identified in the EIS does not pose *any* risk to the environment."); Docket 123 at 8-9 (arguing that Plaintiffs have not shown environment harm would occur without vacatur because "construction is not imminent"); *see also* Docket 118-1 at ¶¶ 14-15 (noting that tailings dam construction will not start for at least two years and there are currently no plans to begin any other construction).

[28] Docket 118-2 at 1. Donlin's proposed order would recognize that Donlin may proceed with work on the project that does not depend on the Section 404 Permit or ROW. Docket 118-2 at 1.

[29] Docket 138 at 2-3.

roadblock" and explaining that "[e]ven if an EIS falls short in some respects, that deficiency may not necessarily require a court to vacate the agency's ultimate approval of a project, at least absent reason to believe that the agency might disapprove the project if it added more to the EIS."[30] Plaintiffs respond that vacatur was not at issue in *Seven County*, but that the opinion nevertheless supports Plaintiffs' contention that vacatur is proper here "because the agencies' errors are serious such that a proper analysis on remand might lead to a different decision," suggesting that there is "reason to believe that the agency might disapprove the project" on remand.[31]

The Court agrees with Defendants that vacatur is not warranted in this case. Much of the FEIS, Section 404 permit, ROW, and JROD went unchallenged, and the Court found that the FEIS failed to adequately consider one aspect of a complex mining project. The issue on remand is narrow and a matter of degree, as the agencies already modeled and considered a tailings spill, albeit only a spill of 0.5% of the total tailings volume. As such, the Court finds that on remand, the agencies "could adopt the same rule [or decision]" and that the flaw in the FEIS identified by the Court is not "fundamental."[32] Further, the Court is persuaded that significant

---

[30] Docket 138 at 3 (quoting *Seven Cnty. Infrastructure Coal.*, 221 L. Ed. 2d at 830, 838).

[31] Docket 139 at 2-3.

[32] *Mont. Wildlife Fed'n*, 127 F.4th at 51 (alteration in original) (internal quotation marks and citation omitted); *see Pollinator Stewardship Council*, 806 F.3d at 532 (citing *Allied-Signal, Inc.*, 988 F.2d at 151 (declining to vacate because there was "at least a serious possibility that the [agency would] be able to substantiate its decision on remand")).

Case No. 3:23-cv-00071-SLG, *Orutsararmiut Native Council, et al. v. U.S. Army Corps of Eng'rs, et al.*
Order on Remedy
Page 9 of 12

Case 3:23-cv-00071-SLG    Document 140    Filed 06/10/25    Page 9 of 12

disruption would occur to Donlin, Calista, and the residents of the Yukon-Kuskokwim region in the event of vacatur, and remand without vacatur will not cause environmental harm if the Court adopts Donlin's proposed self-injunction. Remanding without vacatur will also ensure that the remand is focused on the additional tailings analysis and does not unnecessarily expand beyond this Court's order. Therefore, the Court finds that the equities warrant remand without vacatur in this case.

The Court expects the agencies to take the requisite hard look at the supplemental analysis under NEPA and ANILCA of a larger tailings spill in deciding whether to modify, reaffirm, or rescind the Section 404 permit, ROW, and JROD. While the agencies need not reevaluate each aspect of the Donlin mine project, the agencies must look at the existing record when undertaking their supplemental analysis in making the ultimate determinations on remand.

During remand in this case, Donlin proposes to provide 90 days' notice to the parties and the Court before commencing any construction pursuant to the Section 404 Permit or ROW. Donlin also asks the Court to retain jurisdiction, to require Federal Defendants to provide status reports to the Court at six-month intervals, and to require the agencies to complete their supplemental EIS within 18 months.[33] The Court will retain jurisdiction, enter the 90-day notice requirement, and require status

---

[33] *See* Docket 123 at 9 (Federal Defendants opposing status reports and noting that "[d]eadlines become a substantive constraint on what an agency can reasonably do" (quoting *San Luis & Delta Mendota Water Auth. v. Jewell*, 747 F.3d 581, 606 (9th Cir. 2014))).

reports but declines to impose a deadline on the agencies by which they must complete their supplemental analysis.[34]

## CONCLUSION

In light of the foregoing, IT IS ORDERED that the decision of the U.S. Army Corps of Engineers to issue a Clean Water Act Section 404 permit to Donlin Gold, LLC, and the decision of the Bureau of Land Management to grant Donlin a right-of-way to construct a natural gas pipeline—both relating to the proposed Donlin gold mine in southwestern Alaska and announced in an August 2018 Joint Record of Decision—are hereby REMANDED WITHOUT VACATUR to the agencies for the limited purpose of remedying the error identified in the Court's Decision and Order at Docket 99.

On remand, the agencies shall remedy this error by supplementing the EIS to include analysis of a larger tailings spill, consistent with the Court's Decision and this Order, and modifying, reaffirming, or rescinding the JROD, ROW and/or Section 404 permit as warranted.

During the remand, no construction activities authorized by the Section 404 permit and/or the ROW shall commence without 90 days' advance notice to the parties and the Court. Donlin may proceed with work relating to the Donlin project that does not depend on these authorizations.

---

[34] *See San Luis & Delta Mendota Water Auth.*, 747 F.3d at 606 ("We wonder whether anyone was ultimately well-served by the imposition of tight deadlines in a matter of such consequence. Deadlines become a substantive constraint on what an agency can reasonably do.").

Case No. 3:23-cv-00071-SLG, *Orutsararmiut Native Council, et al. v. U.S. Army Corps of Eng'rs, et al.*
Order on Remedy

The Court further retains jurisdiction during the pendency of the supplemental NEPA review. Federal Defendants shall file a status report with the Court within six months of the date of this Order and every six months thereafter until the supplemental analysis is complete. Any party may move for a status conference upon a showing of good cause.

DATED this 10th day of June, 2025, at Anchorage, Alaska.

/s/ Sharon L. Gleason
UNITED STATES DISTRICT JUDGE

Case No. 3:23-cv-00071-SLG, *Orutsararmiut Native Council, et al. v. U.S. Army Corps of Eng'rs, et al.*
Order on Remedy
Page 12 of 12

Case 3:23-cv-00071-SLG    Document 140    Filed 06/10/25    Page 12 of 12